No. 23-0104

# UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

IN RE: GENERAL MOTORS, LLC,

*Defendant-Petitioner.*

On Petition for Review of Order Granting Class Certification by the United States District Court for the Eastern District of Michigan Civ. No. 2:19-cv-11044 (The Honorable David M. Lawson)

# REPLY TO RULE 23(f) PETITION OF DEFENDANT-PETITIONER GENERAL MOTORS LLC FOR PERMISSION TO APPEAL ORDER GRANTING CLASS CERTIFICATION FOR 26 SEPARATE STATE CLASSES

Richard C. Godfrey
richardgodfrey@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLC
191 N. Wacker Drive
Suite 2700 Chicago Illinois 60606
312-705-7400

Stephanie A. Douglas
douglas@bsplaw.com
Bush Seyferth PLLC
100 West Big Beaver Rd
Suite 400
Troy, MI 248-822-7800

*Counsel for Defendant-Petitioner General Motors LLC*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

I. THE OPINION ERRED BY CERTIFYING CLASSES WHERE MOST CLASS MEMBERS LACK STANDING...........................................1

    A. Most Purchasers Lack Article III Standing. ..........................................1

    B. Many Additional Class Members Lack Standing Under State-Law Manifest Defect Rules. .......................................................3

II. CERTIFYING A CLASS WHERE 40% OF ITS MEMBERS AGREED TO ARBITRATION PRESENTS ANOTHER PLAIN ERROR. ................................................................................................4

III. AN UNEXPLAINED CULLING PROCEDURE CANNOT SOLVE THE MULTIPLE INDIVIDUALIZED STANDING AND OTHER PROBLEMS. ................................................................................6

IV. THE OPINION ERRED BY DISREGARDING THAT INDIVIDUAL ISSUES PREDOMINATE AND WILL NEED TO BE RESOLVED FOR EACH CLASS MEMBER'S CLAIMS. ........................................................................................................8

V. THE OPINION ERRED BY IGNORING DIFFERENCES IN FACT OF INJURY AND DAMAGES AMONG PUTATIVE CLASS MEMBERS. ........................................................................................11

VI. THE OPINION CREATES COERCIVE SETTLEMENT PRESSURE TO PREVENT REVIEW BY THIS COURT. .........................11

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME ..............................13

LIMITATION, TYPEFACE, AND TYPE STYLE REQUIREMENT....................13

CERTIFICATE OF SERVICE ..............................................................................14

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ...........................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Adv. Rehab & Med, P.C.*,
  2021 WL 3533492 (6th Cir. Apr. 27, 2021) ........................................................8

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ...............................................................................9

*In re Bridgestone/Firestone, Inc.*,
  288 F.3d 1012 (7th Cir. 2002) .............................................................................3

*Carriuolo v. Gen. Motors Co.*,
  823 F.3d 977 (11th Cir. 2016) .............................................................................9

*In re Comm. Health Sys., Inc.*,
  2019 WL 5549319 (6th Cir. Oct. 2019) ..............................................................8

*Daffin v. Ford Motor Co.*,
  458 F.3d 549 (6th Cir. 2006) ...........................................................................2, 9

*Felix v. Ganley Chevrolet, Inc.*,
  49 N.E.3d 1224 (Ohio 2015) ...............................................................................3

*In re Gen. Motors LLC Ignition Switch Litig.*,
  257 F. Supp. 3d 372 (S.D.N.Y. 2017) .................................................................4

*Gordon v. Sig Sauer, Inc.*,
  2020 WL 4783186 (S.D. Tex. Apr. 20, 2020) .....................................................4

*Gunn v. NPC Int'l, Inc.*,
  625 F. App'x 261 (6th Cir. 2015) ........................................................................5

*Marshall v. Hyundai Motor Am.*,
  334 F.R.D. 36 (S.D.N.Y. 2019) ...........................................................................4

*Straub v. Ford Motor Co.*,
  2021 WL 5085830 (E.D. Mich. Nov. 2, 2021) ....................................................5

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) .....................................................................................1, 2

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ...................................................................2, 9

## Other Authorities

1 MCLAUGHLIN ON CLASS ACTIONS § 5:56 & n.20 (19th ed. 2022) ..........................4

**INTRODUCTION**

This Petition presents an opportunity for the Court to decide and clarify important and unsettled Circuit law on class certification. The Opinion certified 26 classes comprising hundreds of thousands of vehicle owners despite:

- Most class members not experiencing any alleged defect;

- An estimated 40% of absent class members being subject to arbitration agreements;

- The Opinion recognizing that substantial portions of absent class members lack standing and proposing an undescribed pretrial procedure to "cull" them;

- Highly individualized evidence will be necessary to resolve each class member's claims; and

- Plaintiffs' damages model cannot ascertain each class member's fact of injury or damage, which instead can only be accomplished by analyzing hundreds of thousands of individual transactions, and t will award damages to uninjured people.

**I.     THE OPINION ERRED BY CERTIFYING CLASSES WHERE MOST CLASS MEMBERS LACK STANDING.**

**A.     Most Purchasers Lack Article III Standing.**

This case presents the first opportunity for this Court to assess the impact of the recent Supreme Court ruling that "[e]very class member must have standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). To have Article III standing here, each class member must be injured by the alleged defect; a risk of injury alone is insufficient. *See id.*

1

To meet this requirement, plaintiffs first assert that all vehicles will eventually manifest the defect. Opp. at 2. But this is a nonstarter, rebutted by the record. Warranty data for MY2015-2018 vehicles shows that most class members never had, and never will have, any transmission problems; 87.7% never registered a shift-quality claim, nor did most owners report a shudder issue. Pet. at 3. Nor can plaintiffs' expert Wachs save plaintiffs on this point, as she uses a faulty methodology that conflates two defect theories and double counts warranty claims, artificially inflating predicted claim rates. Ray Report, R. 176-11, PageID.6952-54.

Plaintiffs' fall-back is to argue that uninjured consumers have standing because they "overpaid" for their vehicles (Opp. at 5-10)—even though they never experienced any problem and got exactly the transmission they paid for and expected. This Circuit has never decided whether an "overpayment" theory can confer Article III standing on an uninjured consumer in these circumstances. The Court should address this important question of first impression in this Circuit, especially following *TransUnion*. Other Circuits have rejected the so-called "overpayment" theory, including two recent Eighth Circuit decisions that plaintiffs cannot distinguish. Pet. at 7-8.

Plaintiffs' reliance on *Daffin v. Ford Motor Co.*, 458 F.3d 549, 553 (6th Cir. 2006) and *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 856-57 (6th Cir. 2013) is misplaced. Opp. at 5-6. Both are pre-

*TransUnion* and neither considered whether alleged overpayment without experiencing the claimed defect can satisfy Article III. Rather, both cases only addressed whether a manifested defect was required for express warranty, negligence, and implied warranty claims under Ohio state law (the "Manifest Defect" rule[1]).

To be sure, plaintiffs cite cases for the proposition that overpayment without defect manifestation suffices for Article III standing. Opp. at 7-8. But this Court has not addressed this question, and plaintiffs' citations at most show that the issue is unsettled. This split of authority makes this case the perfect vehicle for setting the law in this Circuit, where these overpayment auto-defect class actions are rapidly accumulating with no end in sight.

### B. Many Additional Class Members Lack Standing Under State-Law Manifest Defect Rules.

Independent of Article III standing, many certified state claims are covered by the substantive Manifest Defect Rule, which bars economic loss claims where no defect in the consumer's own product has manifested. Pet. at 9-10; *e.g.*, *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002).

---

[1] Plaintiffs argue *Felix v. Ganley Chevrolet, Inc.*, did not adopt the Manifest Defect Rule for Ohio (a non-class state). Opp. at 5 n.1. But *Felix* did cite cases applying that Rule. 49 N.E.3d 1224, 1231-32 (Ohio 2015).

Of the 26 states certified here, no fewer than Texas, New York, Illinois, Arkansas, Alabama, Minnesota, Idaho, South Carolina, New Jersey, New Hampshire, Wisconsin, Pennsylvania, Colorado, Louisiana, Kansas, Delaware, and Kentucky follow the Manifest Defect Rule. Pet. at 9-10; 1 MCLAUGHLIN ON CLASS ACTIONS § 5:56 & n.20 (19th ed. 2022). The Opinion erred by certifying classes that include class members from those states and whose vehicle did not manifest any defect—those class members have no claims under their state's substantive law.

Plaintiffs' other state-specific arguments are equally unpersuasive. Opp. at 10. New York cases consistently apply the Manifest Defect Rule to overpayment claims. *E.g.*, *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 57-58 (S.D.N.Y. 2019). And *Gordon v. Sig Sauer, Inc.*, 2020 WL 4783186 (S.D. Tex. Apr. 20, 2020), is an outlier case that contradicts Texas law, even while admitting that "Texas law rarely allows benefit-of-the-bargain damages for unmanifested product defects." *See id.* at *10; Pet. at 9. Thus, certifying classes that include uninjured class members in states that follow the Manifest Defect Rule creates a broad issue ideal for Rule 23(f) guidance.

## II. CERTIFYING A CLASS WHERE 40% OF ITS MEMBERS AGREED TO ARBITRATION PRESENTS ANOTHER PLAIN ERROR.

GM estimates 40% of class members have arbitration agreements governing their transactions. Plaintiffs do not dispute this estimate, which is based on the

4

discovery of named plaintiffs who claim to be typical and representative of the classes. Am. Compl., R. 41, PageID.2475.

Although the arbitration agreements are with dealers, Opp. at 11, GM can enforce them or have the cases sent to arbitration for a determination of enforceability. *E.g.*, *Straub v. Ford Motor Co.*, 2021 WL 5085830, at *8 (E.D. Mich. Nov. 2, 2021). Indeed, just days after issuing the Opinion, Judge Lawson in the companion *Harper* case sent other plaintiffs' transmission claims to an arbitrator to determine those arbitration agreements' enforceability. Pet. at 10.

Judge Lawson plainly erred in finding that GM waived its right to enforce the arbitration agreements of absent class members. Pet. at 11-12. When GM finally learned about named plaintiffs' arbitration agreements in discovery and raised the question of whether absent class members were also subject to arbitration, the district court said "I presume you're going to address all of that in your response to the class cert motion." Transcript, R. 167, PageID.5476. In short, the district court itself indicated GM should raise absent class members' arbitration agreements in its class certification opposition, which is precisely what GM did.

Putting aside the district court's invitation to raise the arbitration agreements of absent class members on class certification, GM did not—and could not—waive arbitration as to absent class members who were not even parties to the litigation. Pet. at 11-12. Plaintiffs' cited cases do not establish otherwise. Opp. at 12. *Gunn*

5

*v. NPC Int'l, Inc.* involved an opt-in collective action under the FLSA where the arbitration argument was not raised until hundreds of employees opted into the litigation. 625 F. App'x 261, 267 (6th Cir. 2015). There, the defendant always had the arbitration agreements for all employees, *id.* at 264; here, GM first learned of named plaintiffs' agreements well into discovery. GM had no ability to enforce any absent class member arbitration agreements prior to opposing class certification, when GM raised it at the invitation of the district court. The other cases plaintiffs cite do not involve arbitration against absent class members or they concern affirmative relief after certification—when absent class members are parties. Opp. at 12.

### III. AN UNEXPLAINED CULLING PROCEDURE CANNOT SOLVE THE MULTIPLE INDIVIDUALIZED STANDING AND OTHER PROBLEMS.

The district court appears to recognize that its class certification order is overbroad and includes those without standing because it states the court will employ an unspecified procedure to "cull" or "screen out" class members who are uninjured or should not be part of the class for other reasons. Opinion, R. 284, PageID.20441, 20444. But deferring a decision to decide individual standing and other dispositive issues by proposing to later cull class members who did not experience a defect, did not present their vehicle to the dealer for warranty repair, or do not otherwise have claims cannot save the Opinion. Class certification of this magnitude should not be

issued lightly or with an expectation that the massive class will be whittled down in the future. Proposing such an irregular procedure reflects an overbroad class that includes masses of members who lack standing and confirms that individual facts predominate.

Moreover, neither the Opinion nor plaintiffs explain this post-certification procedure. Plaintiffs claim that individualized Article III standing or state-law manifest-defect problems can be solved through warranty data or by modified class definitions after summary judgment. Opp. at 18-19, 21. But they do not identify even the most basic procedures, including how the culling would work as a practical matter and when it would occur. If, for example, the court on summary judgment determined (as it must) that Texas applies the Manifest Defect Rule, how would it determine which of the 111,000 Texas absent class members experienced any defect, especially if they made no warranty claims? The exercise will devolve into a byzantine process requiring individual class member discovery and evidence for each vehicle owner and eventual mini-trials for those that could survive summary judgment. In individual lawsuits or arbitrations, GM would engage in discovery, motion practice, and trial to contest whether an individual warranty claimant had experienced a defect, what caused any issues, whether there was injury in fact, and, if so, in what amount. By depriving GM of its legal rights to defend against each

class members' individual facts, the Opinion violates the Rules Enabling Act and Supreme Court precedent. Pet. at 18, 21.

Finally, plaintiffs' reliance on cases rejecting Rule 23(f) petitions because a court could revisit certification later (Opp. at 21) is misguided. Those cases involved either a pending appellate opinion that "might render obsolete a decision from this court" (*In re Adv. Rehab & Med, P.C.*, 2021 WL 3533492, at *2 (6th Cir. Apr. 27, 2021)); or issues that this Court found where not "relevant to class action in litigation in general" (*In re Comm. Health Sys., Inc.*, 2019 WL 5549319, at *1 (6th Cir. Oct. 2019)). Neither case condones deferring important and unsettled issues of class certification law in a massive death-knell type litigation like this one.

## IV. THE OPINION ERRED BY DISREGARDING THAT INDIVIDUAL ISSUES PREDOMINATE AND WILL NEED TO BE RESOLVED FOR EACH CLASS MEMBER'S CLAIMS.

Resolving this case at trial requires examining the differing purchase and vehicle facts of each individual class member. The Opinion committed legal error in concluding the many record differences can be ignored.

***Different Model/MY Transmissions***: First, the 44 different model/MY combinations have different transmission architectures. Pet. at 3. Second, GM made significant transmission changes in each new MY to improve customer satisfaction. *Id.* at 3-4. These differences are compounded by whether each vehicle has a transmission issue, whether it manifested, the differing causes, and any repairs. *Id.*

at 2-4. Plaintiffs *admit* shift quality issues are "'sporadic', and often may not be detected at an inspection." Opp. at 18. This confirms the need for individual evidence as to each class member, an unwieldy, unworkable prospect for a class action of this size. *Daffin* and *Whirlpool* involved far fewer models with no differences in the parts or causation. Pet. at 18-19. Given this record, GM's Petition should be governed by *In re Am. Med. Sys., Inc.* denying class certification. 75 F.3d 1069, 1081-82 (6th Cir. 1996).

Plaintiffs argue two GM bulletins treat the vehicles the same. Opp. at 14-15. But those bulletins note that "[s]ome customers" may experience a shudder or shift quality issue that "may be" because of the transmission, confirming buyer and vehicle differences. TSB, 18-NA-355, R. 204-5, PageID.11657. A panoply of evidence, including varying warranty claim rates and inspections by plaintiffs' and GM's experts, demonstrate differences in alleged defect existence, cause, and manifestation among class vehicles.

***Differences In Purchase Causation, Consumer Knowledge, and Reliance:*** Plaintiffs dismiss these individual differences by citing *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016). Opp. at 17. *Carriuolo* did not involve an alleged omission from unspecified statements about a vague defect, spanning laws of 26 states; it concerned an affirmative misrepresentation uniformly seen, under just Florida law. GM's cited cases, which plaintiffs do not distinguish, deny certification

9

because of differences in causation and knowledge. Pet. at 14-15. Similarly, plaintiffs' contention that reliance can be presumed contradicts the laws of Texas and other states requiring individual proof of reliance, Pet. at 15, impermissibly shifting the burden to (and defeating the defense rights of) GM.

***Differences In Driver Perceptions:*** Plaintiffs cannot dispute that individuals differ in whether they perceive shudder or shift quality. Pet. at 15-16. Instead, they argue bulletins and warranty codes can be used to determine whether a vehicle had and manifested a defect. Opp. at 18. This again ignores GM's right to defend whether each vehicle has unrepaired transmission-caused shudder or shift quality issues, as inspections by both sides' experts found differences among vehicles.

***Differences In Merchantability:*** Plaintiffs argue that a warranty claim satisfies the presentment requirement. But this only shows that certain owners requested repairs under their warranties. Plaintiffs' argument confirms their class definition improperly includes the vast majority of absent class members who never made a warranty claim. For those that did, individual issues predominate as to whether each vehicle had an issue, its cause, whether it was repaired, etc. Pet. at 17.

Plaintiffs also err in arguing shift quality issues had no solution. Opp. at 18-19. Plaintiffs' expert (McVea) reported many plaintiffs told him their complaints had been "significantly reduced," or their vehicle "rarely exhibits" any issues after the transmission fluid was flushed. McVea Report, R. 178-13, PageID.7831-32.

## V. THE OPINION ERRED BY IGNORING DIFFERENCES IN FACT OF INJURY AND DAMAGES AMONG PUTATIVE CLASS MEMBERS.

Plaintiffs do not address GM's arguments about individual differences in injury and damages, but simply describe Eichmann's methodology. Opp. at 19-21. Plaintiffs have no answer to the undisputed facts that Eichmann's model awards damages to class members with no injury and awards an "average" to those with widely varying damages. Nor can plaintiffs dispute that Eichmann's model ignores GM's right to challenge each class member's injury and damages using transaction-specific evidence. The disparate transaction facts show many class members cannot prove fact of injury or damages, such that no class can be certified. Pet. at 19.

## VI. THE OPINION CREATES COERCIVE SETTLEMENT PRESSURE TO PREVENT REVIEW BY THIS COURT.

Plaintiffs misstate the "death knell" factor: It does not require that class certification end the *defendant*, but that it will likely end the *litigation*. Here, the Opinion's certification of hundreds of thousands of vehicle owners will create coercive settlement pressure because of the devastating risk to GM. Plaintiffs seek breathtaking damages, with follow-on actions pending, which will exert unfair settlement pressure. Pet. at 22-23. Unless the Opinion is reviewed now, this Court likely will never have an opportunity to do so.

The Court should also consider the impact of this certification Opinion in context. The Eastern District of Michigan has become inundated with "auto-defect"

class actions based on any and all car parts that need service—from air conditioning systems to fuel pumps to interior panels. The cases are always filed based on warranty service bulletins issued by the Big 3 or internet complaints. Invariably, the cases are styled as class actions based on an "overpayment" theory even where the vast majority of buyers never experienced the alleged defect. This Petition presents the ideal opportunity for this Court to address the abusive aspects of these suits by reversing the Opinion.

Dated: April 24, 2023

Respectfully submitted,

*/s/ Stephanie A. Douglas*
Stephanie A. Douglas
douglas@bsplaw.com
Bush Seyferth PLLC
100 West Big Beaver Rd
Suite 400
Troy, MI 248-822-7800

Richard C. Godfrey
richardgodfrey@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLC
191 N. Wacker Drive
Suite 2700 Chicago Illinois 60606
312-705-7400

*Counsel for Defendant-Respondent General Motors LLC*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE, AND TYPE STYLE REQUIREMENT

1. This brief complies with the type-volume limitations of Fed. R. App. P. 5(c)(1) and Fed. R. App. 27(d)(2)(C) because it contains 2600 words excluding the parts exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in the proportionally spaced typeface using Microsoft Word for Office 365 with 14-point Times New Roman font.

*/s/ Stephanie A. Douglas*
Stephanie A. Douglas
douglas@bsplaw.com
Bush Seyferth PLLC
100 West Big Beaver Rd
Suite 400
Troy, MI 248-822-7800

`Case: 23-0104     Document: 16     Filed: 04/24/2023     Page: 18`

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the Court's CM/ECF system. This petition for was also served on counsel for the parties of record in the trial court proceedings on that same date.

/s/ *Stephanie A. Douglas*
Stephanie A. Douglas
douglas@bsplaw.com
Bush Seyferth PLLC
100 West Big Beaver Rd
Suite 400
Troy, MI 248-822-7800

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

GM designates the following documents from the district court's record that are relevant to this reply:

| Record Entry No. | Docket Text | Page ID Nos. |
|---|---|---|
| 41 | Consolidated Amended Class Action Complaint | ## 2235 - 3135 |
| 167 | Hearing Transcript regarding Motion for Leave to File Second Supplemental Complaint | ## 5467 - 5493 |
| 176-11 | Rose Ray Expert Report | ## 6931 - 7040 |
| 178-13 | William McVea Expert Report | ## 7725 - 7849 |
| 204-5 | Technical Service Bulletin, 18-NA-355 | ## 11656 - 11673 |
| 284 | Opinion and Order Granting Plaintiffs' Motion to Certify Class Action, Certifying Subclasses, and Setting Deadlines for Submission of Proposed Notice | ## 20395 - 20500 |